UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.

D-1 Anthony Dail,

    Defendant.

_____/

Case No. 24-cr-20022-01

Hon. David M. Lawson

## **GOVERNMENT'S SENTENCING MEMORANDUM**

In advance of the sentencing hearing set in the above-listed case, the United States hereby provides its sentencing memorandum and brief.

**Sentencing Issues:**

The government anticipates that Defendant, Anthony Dail, will submit a motion for downward variance form the advisory guidelines range. The government asserts that defendant's request should be denied because defendant was the leader of a conspiracy that possessed significant quantities of cocaine and fentanyl attributable to him under the *Pinkerton* doctrine. *United States v. Pinkerton*, 328 U.S. 640, 367-

1

48 (1946). Defendant was present at locations where drug transactions took place, defendant acquired the financial benefit of those deals as evidenced by buy money found at his primary residence, and defendant owned the properties used for storing the controlled substances. The government expands on this argument in the brief below.

**Government Witnesses:**

The government does not intend to call any witnesses.

**Government Exhibits:**

The government does not submit any exhibits.

Respectfully Submitted,

DAWN N. ISON
United States Attorney

*s/ Jason Dorval Norwood*
Jason Dorval Norwood
Rajesh Prasad
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9587
Jason.Norwood@usdoj.gov

Dated: 9/12/2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.

D-1 Anthony Dail,

    Defendant.
_____/

Case No. 24-cr-20022-01

Hon. David M. Lawson

## GOVERNMENT'S SENTENCING BRIEF[1]

### I. RELEVANT FACTUAL BACKGROUND

#### A. Offense Conduct

    i.    Introduction

From in or around November 2020 and continuing until March 2023, Defendant Anthony Dail ("Defendant") led a drug trafficking organization, which included Donald Rhynes ("Rhynes"), Eric Reynolds ("Reynolds"), and Lekia Lewis ("Lewis") that engaged in the sale and

---

[1] As of the date of this filing, the is no Final Presentence Investigation Report. (ECF No. 66). However, based on correspondence between the United States Probation Office, defense counsel for Mr. Dail, and the government, the government anticipates that Mr. Dail will not file any substantive objections to this version. (ECF No. 66). However, Mr. Dail plans to make an argument for variance from the advisory guidelines.

3

storage of illegal controlled substances throughout Detroit. (ECF No. 66, at ¶ 8). Defendant utilized each co-conspirator to play a specific role in his conspiracy.

Between November 2020 and February 2021, Defendant directed Reynolds and Lewis to facilitate cocaine transactions between Albion, Michigan and Detroit, Michigan. (ECF No. 66, at ¶¶ 9-12). On two occasions in November 2020, law enforcement observed Lewis meet with Defendant at a location owned by Defendant on Sussex St. in Detroit, Michigan ("Sussex St.") then travel back to Albion, Michigan. (ECF No. 66, at ¶¶ 9-12). On December 15, 2020, law enforcement observed Defendant and Lewis meet at Sussex St. (ECF No. 66, at ¶ 10). Defendant briefly entered Lewis's vehicle before she left and returned to Albion, Michigan. (ECF No. 66, at ¶ 10). On January 5, 2021, Defendant and Lewis met at Sussex St. (ECF No. 66, at ¶ 11). On this occasion, law enforcement observed Lewis obtain a white bag from Defendant's vehicle. (ECF No. 66, at ¶ 11).

Reynolds recruited Lewis to work for Defendant's conspiracy by receiving cocaine packages in Detroit and deliver them to Reynolds. (ECF No. 66, at ¶ 12). During this period, Lewis delivered

4

approximately 12 "softball sized packages" of cocaine provided by Defendant to Reynolds. (ECF No. 66, at ¶ 12). Defendant's orchestration of cocaine deals to Reynolds through Lewis, for the purpose of further distribution, totaled over 500 grams of cocaine. (ECF No. 66, at ¶12).

Defendant recruited Rhynes to sell cocaine on behalf of the conspiracy. (ECF No. 66, at ¶ 14).

### ii. A Series of Controlled Purchases for the Conspiracy

On December 6, 2022, Rhynes "fronted" (provided the drugs, with an agreement for future payment) 61.42 grams of cocaine to a confidential source ("CS") on behalf of Defendant's conspiracy. (ECF No. 66, at ¶ 14). Approximately one week later, CS traveled to a residence on Manor St. in Detroit, Michigan ("Manor St.), occupied by Rhynes and owned by Defendant, and paid Rhynes for the cocaine received on December 6. (ECF No. 66, at ¶¶ 14, 23).

On December 20, 2022, CS and Rhynes made arrangements for another purchase of cocaine on the same day. (ECF No. 66, at ¶ 15). The controlled purchase took place at Defendant's car wash located on W. Nichols Rd. in Detroit, Michigan ("Defendant's Car Wash"). (ECF

No. 66, at ¶ 15). Prior to the transaction, CS met with the Defendant, Rhynes, and a third individual. (ECF No. 66, at ¶ 15). Rhynes sold approximately 12.79 grams of cocaine to CS on behalf Defendant's conspiracy. (ECF No. 66, at ¶ 15).

On the same day, Rhynes met with CS at Manor St. and fronted CS approximately 14.96 grams of cocaine. (ECF No. 66, at ¶ 16). Approximately eight days later, CS met with Rhynes and paid for the cocaine received at Manor St. (ECF No. 66, at ¶ 17).

On January 5, 2023, Rhynes engaged in a fourth sale of cocaine with CS, on behalf of Defendant's conspiracy. (ECF No. 66, at ¶ 18). On the same day, Rhynes sold CS approximately 13.82 grams of cocaine. (ECF No. 66, at ¶ 18).

On January 30, 2023, Rhynes engaged in a fifth sale of cocaine with CS at Manor St. for approximately 15.20 grams of cocaine on behalf of Defendant's conspiracy. (ECF No. 66, at ¶ 19).

On February 21, 2023, Rhynes met with CS at Defendant's Car Wash for a sixth sale of cocaine. (ECF No. 66, at ¶ 20). Prior to the transaction, CS met with the Defendant, Rhynes, and a third

6

individual. (ECF No. 66, at ¶ 20). Rhynes sold approximately 14.07 grams of cocaine to CS. (ECF No. 66, at ¶ 20).

During this period, law enforcement electronically surveilled Defendant's vehicle frequenting Defendant's Car Wash, Manor St., Sussex St., Defendant's primary residence on Queen Ave in West Bloomfield, Michigan ("Queen Anne"); and a residence on McDowell St. in Ferndale, Michigan, owned by Defendant ("McDowell St."). (ECF No. 66, at ¶¶ 21, 24, 27).

    iii.    Search Warrants

On February 24, 2023, law enforcement executed search warrants at multiple addresses utilized and owned by the Defendant including Manor St., Defendant's Car Wash, Sussex St., Queen Anne, and McDowell St. (ECF No. 66, at ¶¶ 22-27).

During the execution of the search warrant at Manor St., law enforcement recovered 1,041.22 grams of fentanyl, 1,131.49 grams of cocaine, 15.21 grams of cocaine base, and 14.2 grams of heroin. (ECF No. 66, at ¶ 23). A brick-shaped package, which contained over a kilogram of cocaine included the word "Panda," on the wrapping. (ECF No. 66, at ¶ 23). Additionally, law enforcement recovered

7

approximately five firearms including an AR-15 style pistol, two Glock pistols, a Hi-Point pistol, and a .22 rifle. (ECF No. 66, at ¶ 23). Law enforcement also recovered drug paraphernalia including Tupperware containing chunks of substances and multiple digital scales. (ECF No. 66, at ¶ 23).

On the same day, law enforcement executed a search warrant at Defendant's Car Wash. (ECF No. 66, at ¶ 26). Law enforcement recovered a brick-shaped package, which included the word "Panda," on the wrapping (like the package recovered at Manor St.). (ECF No. 66, at ¶ 26). This package contained 1,017.99 grams of fentanyl. (ECF No. 66, at ¶ 26). Law enforcement also recovered a digital scale and packaging materials. (ECF No. 66, at ¶ 26).

Law enforcement also executed the search warrants at Queen Anne. (ECF No. 66, at ¶ 27). At this residence, law enforcement recovered $78,825 in United States currency, jewelry, a gold money counter, and a firearm. (ECF No. 66, at ¶ 27). In the house, Defendant stored tax receipts for Manor St. and the deed for Defendant's Car Wash. (ECF No. 66, at ¶ 27). Notably, law enforcement recovered a portion of buy money from the controlled purchase between Rhynes and

8

CS at Dail's primary residence located on Queen Ave. (ECF No. 66, at ¶ 26).

Law enforcement executed a search warrant at McDowell St. recovered $63,810 in United States currency, three additional firearms, oxycodone pills, a heat sealer, and material to produce counterfeit licenses. (ECF No. 66, at ¶ 24).

At Sussex St., law enforcement recovered 111.06 grams of cocaine, another firearm, $5,532 in United States currency, and a digital scale. (ECF No. 66, at ¶ 25).

### B. Sentencing Guidelines Calculation

Defendant's advisory sentencing guidelines range is 210-262 months. (ECF No. 66, at ¶ 89).

Defendant's sentencing range is predicated on a base offense level of 32, because the offense involved at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight. (ECF No. 66, at ¶ 34). Defendant also receives sentencing enhancements for his leadership role in the conspiracy under USSG § 3B1.1(c), possession of dangerous weapons under USSG § 2D1.1(b)(1), and maintaining a drug premises under USSG § 2D1.1(b)(12). (ECF No. 66, at ¶¶ 35-36, 38).

If granted acceptance of responsibility, Defendant would receive a score of 36. (ECF No. 66, at ¶ 42). The government intends to move the for the third level for acceptance of responsibility, which would result in a total offense score of 35. (ECF No. 66, at ¶ 43).

## II.   ARGUMENT

Pursuant to 18 U.S.C. § 3553(a), "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those factors include (in relevant part):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentenced imposed---

   (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)   to afford adequate deterrence to criminal conduct;

   (C)   to protect the public from future crimes of the defendant; and

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

### A.    The Nature and Circumstances of the Offense

Defendant was the leader of a drug conspiracy involving significant quantities of fentanyl, cocaine, and several firearms. (ECF No. 66, at ¶¶ 8-27). Based on Defendant's conduct and those involved in his conspiracy, he is responsible for 2,059.21 grams of fentanyl, 1,874.71 grams of cocaine, and smaller quantities of cocaine base and heroin. (ECF No. 66, at ¶ 28).

Under the *Pinkerton* doctrine, "a member of a conspiracy is liable for substantive offenses committed by his co-conspirators, even if he did not participate in them, as long as: (1) the offenses are done in furtherance of the conspiracy, (2) they fall within the scope of the

11

unlawful project, and (3) they are reasonably foreseeable consequences of the unlawful agreement " *United States v. Sadler*, 24 F.4th 515, 545 (6th Cir. 2022) (quoting *United States v. Hamm*, 952 F.3d 728, 744 (6th Cir. 2020, citing *United States v. Pinkerton*, 328 U.S. 640, 367-48 (1946)) (internal citations omitted). Under the doctrine, the criminal intent is imputed to each member:

> The criminal intent to do the act is established by the formation of the conspiracy. Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act was in execution of the enterprise. The rule holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. The principle is recognized in the law of conspiracy when the overt act of one partner is attributable to all.

*Pinkerton* at 647.

The crimes committed "do not have to have been agreed upon, intended or even discussed" by the defendant for liability to attach. *Hamm* at 744 (citing Paul Marcus, *Criminal Conspiracy Law: Time to Turn Back from an Even Expanding, Ever More Troubling Area*, 1 Wm. & Mary Bill Rts. J. 1, 6 (1992)).

Here, Defendant created a criminal conspiracy where he used each member for a specific role. (ECF No. 66, at ¶¶ 8-27). Defendant

12

utilized Reynolds through Lewis to transport cocaine from Detroit, Michigan to Albion, Michigan. (ECF No. 66, ¶¶ 9-12). Therefore, he is responsible for all of the cocaine involved in this portion of the conspiracy. (ECF No. 66, ¶ 12).

The same is true for his use of Rhynes in the conspiracy. Defendant employed Rhynes to manage Defendant's Car Wash from April 2020 until October 2022—the same period where he sold illegal controlled substances on behalf of the conspiracy and assisted in the storage of drugs at this location. (ECF No. 73, at ¶¶ 17, 23, 29, 79). Defendant also directed Rhynes to sell illegal controlled substances on behalf of the conspiracy. (ECF No. 66, at ¶ 14). As part of the conspiracy, Rhynes engaged in six controlled purchases on behalf of Defendant's conspiracy. (ECF No. 66, ¶¶ 14-20). Defendant was present to meet CS before two of the drug transactions at Defendant's Car Wash. (ECF No. 66, at ¶¶ 15, 20). Law enforcement recovered buy money from one of these transactions during the search of Queen Anne—Dail's primary residence. (ECF No. 66, at ¶ 27). Defendant played an active role in the conspiracy at this location, owned this location, and employed his co-conspirator, Rhynes, to manage this

location. Consequently, he is responsible for 1,017.99 grams of fentanyl found at this location under the *Pinkerton* doctrine.

Defendant is also responsible for the illegal controlled substances and firearms recovered at Manor St. Defendant owns this property and possessed the tax receipts at his primary residence. (ECF No. 66, at ¶27). Defendant directed Rhynes to conduct drugs deals for him and Rhynes, in turn, stored drugs for the conspiracy, and protected those drugs with firearms located at Manor St. (ECF No. 66, at ¶23). Defendant actively monitored this location as evidenced by his frequent trips to this location. (ECF No. 66, at ¶ 21). Thus, all of the controlled substances at Manor St. were reasonably foreseeable to Dail, and he is, therefore, responsible for 1,041.22 grams of fentanyl, 1,131.49 grams of cocaine, 15.21 grams of cocaine base, and 14.2 grams of heroin, and five firearms including an AR-15 style pistol located at this location under the *Pinkerton* Doctrine. (ECF No. 66, at ¶ 23).

Based on the quantity of illegal controlled substances and defendant's involvement, his leadership role in the conspiracy, and his monitoring of his co-conspirators to make sure the conspiracy was

successful, he should be considered a top-tier, high volume drug trafficker.

### B. History and Characteristics of the Defendant

Defendant is 46 years old. (ECF No. 66; PageID.253). Defendant has lived in the Eastern District of Michigan throughout his life. (ECF No. 66, at ¶ 65). Defendant has one adult child and one minor child. (ECF No. 66, at ¶ 63). Defendant reported using cocaine, with periods of daily use and periods of abstinence. (ECF No. 66, at ¶ 74).

Defendant has an extensive criminal history. In 2005, Defendant was convicted of a controlled substance offense and weapons offense involving a firearm, over 100 grams of cocaine, and 216 grams of marijuana. (ECF No. 66, at ¶ 51). The incident stemmed from an argument between Defendant and a woman, which involved a firearm. (ECF No. 66, at ¶51). During his interaction with law enforcement, Defendant resisted. (ECF No. 66, at ¶51). Defendant was sentenced in 2005 and paroled in 2016. (ECF No. 66, at ¶ 51). Defendant was also convicted of an offense involving the possession of weapons in 2012. (ECF No. 66, at ¶ 52).

Due to Defendant's incarceration and other factors, he has an extensive history of unemployment including periods from 2005-2016 and 2017-2023. (ECF No. 66, at ¶¶ 83 and 86). Except for one year of self-employment, Defendant had no work history until the month that search warrants were executed at his properties. (ECF No. 66, at ¶¶ 22-27, 83).

### C. The Need for the Sentence Imposed

The criminal conduct before the Court is significant. Defendant's leadership role in distribution and concealment of significant quantities of fentanyl and cocaine shows defendant was responsible for a drug trafficking scheme in the Eastern District of Michigan.

A sentence at the bottom of defendant's advisory guidelines range (210 months) would provide the defendant with adequate deterrence to further criminal conduct and protect the public from future crimes of the defendant.

### III. CONCLUSION

The record before the Court shows that defendant engaged in leading others and engaged in extensive criminal conduct with illegal

controlled substances and possession of firearms as part of the conspiracy.

For these reasons, a sentence of 210 months is appropriate.

Respectfully Submitted,

DAWN N. ISON
United States Attorney

*s/ Jason Dorval Norwood*
Jason Dorval Norwood
Rajesh Prasad
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9587
313-269-4697 (Cell)
Jason.Norwood@usdoj.gov

Dated: 9/12/2024

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to attorney on record.

*s/ Jason Dorval Norwood*
Jason Dorval Norwood
Assistant United States Attorney

17