UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 2:24CR20022-001 |
| | ) | |
| Plaintiff, | ) | HON. David M. Lawson |
| | ) | |
| v. | ) | SENTENCING |
| | ) | MEMORANDUM |
| | ) | |
| ANTHONY DAIL | ) | |
| | ) | |
| Defendant. | ) | |

## **SENTENCING MEMORANDUM**

**NOW COMES** Defendant, **ANTHONY DAIL,** by and through his attorney, **Todd Russell Perkins**, and hereby provides the following **SENTENCING MEMORANDUM** to this Honorable Court for consideration in sentencing for the above captioned matter.

### I. INTRODUCTION

Defendant Anthony Dail comes before this Court a humbled man pleading for relief. Through his plea, he has accepted his role for the crime charged, and expresses to this Court that although he is committed to change so that he may continue to support his family. Mr. Dail is a pillar to those around him and a lengthy term of incarceration would not only affect Mr. Dail, but his children, and the community at large. Mr. Dail has the support from his family and his community.

1

Leniency is at the discretion of this most Honorable Court, and humbly requests leniency for the reasons stated herein.

## II. FACTUAL BACKGROUND

On January 11, 2024, Defendant was charged by way of indictment of: Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance (400 grams or more of fentanyl), in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(vi); Count 2 charged the defendant with Possession of Fentanyl with Intent to Distribute (400 grams or more of fentanyl), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi), subject to increased penalties for having a prior conviction for a serious drug felony for which he served an imprisonment term of more than 12 months, pursuant to 21 U.S.C. § 851; and Count 3 charged the defendant with Possession of 500 grams or more of Cocaine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II).

On June 4, 2024, the Defendant, before the Honorable David M. Lawson, entered a plea of guilty to Count 1 and 2 of the Indictment, pursuant to a written Rule 11 Plea Agreement. The Court accepted the plea and took the Rule 11 Plea Agreement under advisement.

Based on the offense level calculated by The United State Probation Office, Mr. Dail has an offense level of 35, resulting in a guideline range of 210 to 262 months, but this is disputed as a direct result of the application of 2 points for the

2

firearms that were recovered in this matter. To the extent that the Court acquiesces and agrees to this calculation, then the guideline range would be a total of 33 points. Consistent with the Rule 11 Agreement and with the scoring of the guidelines, but for the dispute as it relates to the "firearm points", Mr. Dail does not dispute this range, but he is seeking an "equitable concession" which will be addressed in the body of this memorandum.

Under the terms of the Rule 11 plea agreement executed and taken under advisement by this Honorable Court, there is a disputed guideline range. The Government recommends a sentence near the bottom of the guidelines, as calculated by the Court at sentencing.

### III. IMPOSITION OF A SENTENCE PURSUANT TO 18 U.S.C § 3553

Section 3553(a) of Title 18 specifies the factors courts are to consider in imposing a sentence. The list of factors is preceded by what is known as the parsimony principle, a broad command that instructs courts to impose a sentence sufficient, but not greater than necessary, to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation. A sentencing court is then directed to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to serve the four overarching aims of sentencing. *Dean v United States*, 137 S Ct 1170, 1175; 197 L Ed 2d 490 (2017)

(internal citations and quotations omitted). Weighing those factors "is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *United States v Williams*, 807 Fed Appx 505, 509 (CA 6, 2020). The factors enumerated under 18 U.S.C. §3553(a) are as follows:

> a. **18 U.S.C. § 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant.**

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v United States*, 552 US 38, 52; 128 S Ct 586, 598; 169 L Ed 2d 445 (2007). "[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing" *Pepper v United States*, 562 US 476, 492; 131 S Ct 1229, 1242; 179 L Ed 2d 196 (2011) (quoting *United States v. Bryson*, 229 F.3d 425, 426 (C.A.2 2000)).

> Section 3661 confirms the all-encompassing scope of the district court's inquiry by providing that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (1988). Thus, the statutory text explicitly reserves to district judges, who have the responsibility of imposing actual sentences on particular defendants, the authority to take into account personal and non-criminal factors in ways that, in Congress's judgment, elude expression as generalizable

> sentencing directives and which, accordingly, are deemed inappropriate for guideline treatment.
>
> *United States v Davern*, 970 F2d 1490, 1515 (CA 6, 1992) (Jones, N.R. dissenting).

Thus, pursuant to 18 U.S.C. § 3553(a)(1) requires a sentencing judge to take a look beyond the crime as charged and perform a searching analysis to craft a more just sentence. See *Pepper,* supra. An analysis of a defendant's history and characteristics as he comes before the court on the day of sentencing is required. *Id.*

> **b. 18 U.S.C. § 3553(a)(2) requires the Court to consider the need for the sentence imposed to: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Congress has instructed sentencing courts to impose sentences that are " 'sufficient, *but not greater than necessary*, to comply with' " (among other things) certain basic objectives, including the need for "just punishment, deterrence, protection of the public, and rehabilitation." *Holguin-Hernandez v United States*, 140 S Ct 762, 765–66; 206 L Ed 2d 95 (2020). "[A] court may not *impose or lengthen* a prison sentence to enable an offender to complete a treatment program or otherwise promote rehabilitation." *United States v Walker*, 649 F3d 511, 513 (CA 6, 2011) (quoting *Tapia v United States*, 564 US 319, 335; 131 S Ct 2382, 2393 (2011)) (emphasis in original).

5

"These provisions make clear that a particular purpose may apply differently, or even not at all, depending on the kind of sentence under consideration. For example, a court may *not* take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release." *Tapia* 564 US at 326.

### c. 18 U.S.C. § 3553(a)(3) requires the Court to consider the kinds of sentences available.

§ 3553(a)(3) "directs the judge to consider sentences other than imprisonment." *Gall* 552 US at 59. Thus, unless explicitly prohibited under statute, a Court must consider alternative means to accomplish the objectives of 18 U.S.C. § 3553.

### d. 18 U.S.C. § 3553(a)(4) requires the Court to consider the kinds of sentence and sentencing range as set forth by the guidelines and any violations of probation or supervised release.

Guidelines put forth by the commission are advisory in nature. The "district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views," embodied in the applicable Guidelines. *United States v Taylor*, 648 F3d 417, 428 (CA 6, 2011). Although advisory in nature, the "district court must still give 'respectful consideration,'" to the guidelines set forth by the Commission. *Id*.

### e. 18 U.S.C. § 3553(a)(5) requires the Court to consider any pertinent policy statements issued by the Sentencing Commission.

    **f. 18 U.S.C. § 3553(a)(6) requires the Court to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.**

    **g. 18 U.S.C. § 3553(a)(7) requires the Court to consider the need to provide restitution to victims of the offense.**

## IV. FACTORS APPLIED TO MR. DAIL

    **a. Application of 18 U.S.C. § 3553(a)(1) to Anthony Dail, which requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant.**

Defendant Dail is a 47-year-old lifelong resident of the Detroit area. Father and provider to two children, with another on the way. Mr. Dail has done his best to provide for his family, despite his current situation. Unfortunately, Mr. Dail has found himself caught up in a series of poor choices, which has ultimately led him to the instant case. It is clear that he needs help with decision-making and impulse control, which are the harbingers of addictive behaviors. Such behaviors are the underpinnings of his poor decisions in this instant case and those which have led to his gambling addiction. Needless to say, these are also behaviors that have led to addictions in other areas of his life.

Throughout his life, Mr. Dail has been honest about his misdeeds, and he wishes to impress upon this Court that he remains positive and hopes for change by using his experiences in the criminal justice system to better himself. Mr. Dail recognizes that he has made mistakes, and he continues to take responsibility for same, as shown by his plea in the instant. Mr. Dail recognizes the seriousness of the

charge against him, but in accepting responsibility, he offers the Court mitigating factors, in his professional potential and familial ties.

> **b. 18 U.S.C. § 3553(a)(2) requires the Court to consider the need for the sentence imposed to: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Unlike 18 U.S.C. § 3553(a)(1), 18 U.S.C. § 3553(a)(2) requires that this Court view Defendant as a whole, and craft a just and fair punishment based on the factors seen in § 3553(a)(1). This holistic approach allows this Court to modify a sentence to custom fit a defendant while serving the best interest of the harmed party. It is important for this Court to craft a sentence based on Mr. Dail's history as outlined in Section 3553(a)(1) to craft a "just punishment, deterrence, protection of the public, and rehabilitation." *Holguin-Hernandez*, supra.

This Court can accomplish the factors in accordance with § 3553(a)(2) by offering a downward variance from the guidelines as calculated by the Probation Department, that would comply with all the factors, and be crafted to be "just punishment, deterrence, protection of the public, and rehabilitation." *Holguin-Hernandez*, supra.

> **c. 18 U.S.C. § 3553(a)(4) requires the Court to consider the kinds of sentence and sentencing range as set forth by the guidelines and any violations of probation or supervised release.**

Guidelines put forth by the commission are advisory in nature. The "district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views," embodied in the applicable Guidelines. *United States v Taylor*, 648 F3d 417, 428 (CA 6, 2011). Although advisory in nature, the "district court must still give 'respectful consideration,'" to the guidelines set forth by the Commission. *Id*.

> **i. *Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance*, in contravention of 21 U.S.C. § 846, 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(vi) and *Possession of Fentanyl with Intent to Distribute*, in contravention of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(vi).**

United States Code for *Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance*, in contravention of 21 U.S.C. § 846, 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(vi) and *Possession of Fentanyl with Intent to Distribute*, in contravention of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(vi) is punishable by a term of incarceration of ten years to life imprisonment. Based on the scoring assessed by the Probation Department, the Defendant has an applicable guideline range of 210 to 262 months.

The Presentence Report contends that there should be a 2 point addition for a firearm found in the residence at the time the search warrant was executed. *See* ECF No.66 PageID.261. However, the report fails to consider that the firearm in question

was lawfully registered to Mr. Dail's girlfriend at the time, who was present at the home. To attribute the firearm to Mr. Dail would be incorrect.

Further, the report attributes firearms located at other addresses to Mr. Dail as well. Those addresses, although owned by Mr. Dail, were occupied and rented by others. To attribute them to Mr. Dail simply because he was the owner belies the idea of a tenant having their own personal property, and thus should not be attributed to Mr. Dail. There is no indication that the precepts and principles of *Pinkerton* should apply to this area of scoring.

However, other Circuit Courts have stressed that mere presence of firearms near alleged drug trafficking does not show a connection another felony. "[W]here 'a firearm was possessed' by the defendant personally… the district court must determine whether the facts of the case show that ***a 'connection' between the firearm and the offense, though possible, is not probable***." *United States v Carillo-Ayala*, 713 F3d 82 (CA 11, 2013). (emphasis added). Accordingly, in an unreported case in the Southern District of Ohio, the Court held that, "the firearm must be strategically located so that it is quickly and easily available for use." *Franklin v United States,* no. 2:08-CR-186(14), 2013 WL 1346243 (SD Ohio, April 2, 2013), *report and recommendation adopted* no. 2:08-CR-186(14), 2013 WL 1758944 (SD Ohio, April 24, 2013).

Takin these facts into account, it is believed that a two point addition is not warranted.

Moreover, Defendant recognizes that he has plead to the charges as outlined in the Rule 11, and, if this Court may recall, it was difficult for Mr. Dail at the plea hearing. In this area of the scoring and the underlying case, it was important for Mr. Dail to understand how the long-standing precedent of *Pinkerton* case (328 U.S. 640 (1946)) applies to his case. While we do not believe that it should apply to the scoring of the firearms, we must concede its application here.

As a general synopsis of the rule of law which arises from this decision being that, in summation, *an overt act of one partner may be the act of all without any new agreement specifically directed to that act*. In this case, as it is revealed from the execution of the search warrants, there was a substantial seizure of fentanyl from a property that was owned by Mr. Dail. The fact that Mr. Dail may declare that he only conducted transactions involving cocaine is essentially of no moment from a legal perspective and does not remove the sting of legal liability for the fentanyl. But, we do believe that this Court can "equitably" consider this position and vary downward in its imposition of a sentence.

It should be noted that over the course of preparing for this eventual sentencing hearing, defense counsel and the government have wrangled over this issue. Where the concern that the government had that Mr. Dail was disemboweling

the Rule 11 Agreement and essentially overlooking its clear terms and implications, it had to be explained that he is not. Beyond the 2pts sought to be removed for the firearms that were discovered in this matter, for reasons previously stated, Mr. Dail concedes that the scoring on the drug quantities are accurate, and the scoring of 32pts is the uncontested score. But, again, to the extent that Mr. Dail argues that he never "dealt" in that narcotic specifically, this is where he seeks grace and mercy from the court.

As this Court has probably heard many times, that "grace" is getting something you don't deserve and "mercy" is not getting something you do deserve, Mr. Dail is seeking equity in the form of grace and mercy. Although at one point it (the modified scoring) was thought to be argued as an objection, it is merely a point to consider – *in equity*. In this portal, one can argue that the converted weight, if the fentanyl was not applied, would be 374.96kg, and that would represent a base level offense of 24pts, instead of the current scoring which results in a base level offense of 32pts. While this is a wish list for Mr. Dail, not meant to offend, but to persuade the Court to assuage and vary downward the properly scored drug quantity.

If this *calculus* were applied, along with the 2pts for his supervisory role, pursuant to USSG §3B1.1(c), and the additional 2pts for the use of the facilities (real property) in this conspiracy, pursuant to USSG §2D1.1(b)(12), and without the application of the 2pts for the firearms, pursuant to USSG §2D1.1(b)(1), this would

result in offense level of 28pts. After reducing this offense level by 3pts, the offense level would be 25pts. In this instance, there is no contest to the scoring of 6pts on the criminal history scoring, which lands in the criminal history category of III, therefore, a guideline range of 87-108 months results.

Before opposing counsel contends that this scoring flies in the face of the plea agreement and Mr. Dail's actual plea, it should be noted that this is simply that Mr. Dail wants the Court to consider in fashioning a sentence in which the guideline scoring is 210-262 months. That is inescapable, but it is believed that there will be other(s) who have accepted responsibility for the fentanyl drug, through guilty pleas. [NOTE: This is the sole reason that Mr. Dail sought a continuance of his sentencing hearing.]

Although Mr. Dail may have an applicable guideline range of 210 to 262 months, guidelines are advisory in nature. *Taylor*, supra. Based on other sentencing factors, this Court may impose a non-guideline sentence which still accomplishes all the other factors put forth by 18 U.S.C. § 3553. *Taylor,* supra. We believe that this "equitable" analysis should be persuasive in varying his sentence downward, far below the range as set by Probation.

Mr. Dail understands the severity of the crimes he has plead to and is not a person to waste the opportunity that has been placed before him. The harsh reality has struck close to home for Mr. Dail, as any term of incarceration will lead to

significant time away from his family. At the very least, given the mandatory minimum of 120 months, he will be away from his family for a decade. It is clear from his letters of support (See Exhibit – A – Letters of Support) and the remarks of the Probation Department that has summarized the family history of Mr. Dail, he has the support to make it. What comes crashing home with an individual who has suffered with addictions and addictive behavior, and the fog is lifted, is that Mr. Dail realizes how important he is to his family. The things that he took for granted, i.e., time to spend with his children (although he has been an attentive father; he knows he could do more), time to spend with family, applying his work ethic to businesses owned and operated by family and close friends, increasing his knowledge and skill set through educational and training programs, etc.; he recognizes will be delayed in some respects. But, he is committed to taking every opportunity the Bureau of Prisons and that this Court will permit to ensure that he is a more capable person when he exits from prison than today. Some find that imaginable, but Mr. Dail is committed to this.

Notwithstanding his "equitable" arguments, Mr. Dail is taking responsibility for his actions. To suggest that he denying any involvement, this would not be what Mr. Dail would want this Court to take away from this argument in "equity". To say that he is taking responsibility and then to turn around and declare a lack of involvement would be contradictory and counterintuitive to this process. In his

efforts to seek a downward variance, he has not vilified others and declared any particular person a wrongdoer. He recognizes that each person must own their conduct, as he is doing in this instance. To speak metaphorically in this regard, "[A]s a person who is living in a glass house, he is not one to throw stones". But, he is hopeful that other(s) will act similarly.

Even in a world of wrong, one can still act right. One can own their wrongs, which Mr. Dail is doing. One can seek grace and mercy and prove their worthiness through humility, introspection, admitting one's wrongs and seeking forgiveness from those whom he has hurt, and this is where we find Mr. Dail. He is not running from this wrong through an artful way of trying to convince the Court to vary downward. No, he is explaining a matter in which he concedes his responsibility for being in a conspiracy, and accepting responsibility for fentanyl charge, through a difficult, but knowing and voluntary plea.

As sentences are individualized and particularized by the person and the circumstances, it is our belief that this matter merits consideration for a great downward departure from the currently scored guideline range of 210-262 months, which we argue should be reset at 168-210 months (removing the 2pts for the firearms). If one considers the equitable arguments, it places Mr. Dail even below the mandatory minimum, which is why we plead for relief from the Court and seeking a sentence of 120 months. This case exemplifies grace and mercy, and we

are prayerful that the Court will grant this relief. We also would argue that the factors of §3553(a) are met with the imposition of this prayed for sentence.

## V. CONCLUSION AND RELIEF REQUESTED

Defendant Anthony Dail comes before this Court a humbled man pleading for relief. Through his plea, he has accepted his role in the crime charged. Further, a term of incarceration would not only affect Mr. Dail, but his partner and family. Leniency is at the discretion of this most Honorable Court. Mr. Dail humbly requests that this Court grant him leniency, and vary downward from the guidelines as prescribed.

Respectfully Submitted,

/s/Todd Russell Perkins
Todd Russell Perkins
PERKINS LAW GROUP
*Attorneys for Defendant*
615 Griswold, Suite 400
Detroit, Michigan 48226
(313) 964-1702
Tperkins@perkinslawgroup.net

## CERTIFICATE OF SERVICE

I certify that on October 7, 2024, a Sentencing Memorandum was served on the United States Attorneys of record through the Pacer/ECF Electronic Filing System.

Respectfully Submitted,

PERKINS LAW GROUP, PLLC

By:

/s/Todd Russell Perkins
Todd Russell Perkins
Tperkins@perkinslawgroup.net
Attorney for Defendant
615 Griswold, Suite 400
Detroit, Michigan 48226
(313) 964-1702